UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL GALLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00952-GCS |
| | ) |
| RANDALL MCBRIDE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Pending before the Court is Defendant Randall McBride's ("McBride") Motion for Summary Judgment. (Doc. 36). Defendant filed the Motion along with an accompanying Memorandum of Support and Notice on February 6, 2024. (Doc. 37, 38). Plaintiff Carl Gallo ("Gallo") failed to file a response in opposition to the Motion. Thus, Defendant's Motion for Summary Judgment is unopposed. For the reasons delineated below, Defendant's Motion for Summary Judgment is **GRANTED**. (Doc. 36).

BACKGROUND

Plaintiff Gallo was an inmate of the Illinois Department of Corrections ("IDOC") previously housed at Sheridan Correctional Center ("Sheridan").[1] On September 17, 2020, Plaintiff filed the present suit pursuant to 42 U.S.C. § 1983 for violations of his

---

[1] According to the Illinois Department of Corrections "Individual in Custody Search," Plaintiff was paroled on January 24, 2024. (Doc. 43, p. 1).

constitutional rights while he was incarcerated at the Big Muddy River Correctional Center. (Doc. 1). In his Complaint, Plaintiff alleges that from August 2017 to September 2018 Defendant Dentist McBride acted with deliberate indifference towards his serious dental needs. *Id.* at p. 8-11.

Plaintiff reportedly began experiencing dental pain around August 24, 2017, and he had to submit two requests for a dental appointment before being seen by McBride on September 6, 2017. (Doc. 1, p. 8). At the appointment, McBride allegedly refused to pull a tooth causing Plaintiff pain, and he only proscribed Plaintiff ibuprofen in response. *Id.* Plaintiff submitted additional dental appointment request slips on November 18, 2017, February 10, 2018, and April 28, 2018, and he was finally seen again on May 1, 2018. *Id.* at p. 9. During the May 1st appointment, Plaintiff claims that McBride identified "widening" on tooth #18. Defendant McBride proscribed additional ibuprofen along with an antibiotic for treatment. *Id.* Plaintiff was supposed to be seen in two weeks for a follow-up appointment, but he was not seen again by McBride until June 14, 2018. *Id.* at p. 10. McBride once again did not remove the tooth. *Id.* The tooth was finally pulled by Defendant McBride on September 17, 2018. *Id.*

After preliminary review pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed against Defendant McBride for alleged deliberate indifference to his serious dental needs in violation of the Eighth Amendment. (Doc. 9, p. 3). The Court then entered the initial scheduling order, and Defendant McBride moved to withdraw the affirmative defense of failure to exhaust administrative remedies on March 6, 2023. (Doc. 33). The merits scheduling order was entered that same day, and the dispositive motion deadline

was set for February 6, 2024. (Doc. 35). Defendant timely filed the pending Motion for Summary Judgment. (Doc. 36).

## FACTS

Plaintiff's failure to respond to Defendant's Motion for Summary Judgment is deemed an admission that Defendant McBride's version of the facts are true. *See, e.g.*, SDIL-LR 56.1(g) (stating that "[a]ll material facts set forth in the Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). Therefore, the facts asserted by Defendant McBride are deemed admitted to the extent that they are supported by evidence in the record. *See* FED. R. CIV. PROC. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). Defendant's statement of facts, as supported by the record, are detailed below.

On or around September 6, 2017, Defendant McBride first saw Plaintiff Gallo in dentistry. (Doc. 37, Exh. 2, p. 3). Plaintiff complained of recently experiencing "electricity" around teeth numbers 18 and 19, also known as the first and second lower-left molars. *Id*. Upon examination, Defendant noted that Plaintiff had previously had these teeth repaired as they contained large fillings that were aged, but otherwise the teeth were well placed and maintained. *Id*. Defendant saw no signs of disease when he examined the soft tissue surrounding these teeth. *Id.* However, Defendant obtained a periapical x-ray[2] of Plaintiff's teeth and noted there were no radiographic evidence of fractures, secondary

---

[2]   A periapical x-ray is an x-ray that shows teeth from the crown to the root.

caries,[3] or apical pathology.[4] *Id.* This allowed Defendant McBride to conclude that Plaintiff's periodontal status was excellent, and no treatment was necessary. (Doc. 37, Exh. 2, p. 3). To address Plaintiff's pain, Defendant proscribed Plaintiff 30 tablets of ibuprofen to be taken one at a time every four to six hours as needed. *Id.* Defendant planned to monitor these two teeth on an as needed basis moving forward. *Id.*

Defendant next saw Plaintiff on May 1, 2018. (Doc. 37, Exh. 2, p. 5). Plaintiff reportedly informed Defendant that it hurt to bite down on teeth numbers 18 and 19. *Id.* Upon examination, Defendant noted that the teeth and restorations appeared to remain intact. *Id.* Defendant then performed a percussion test, during which Plaintiff reported pain. *Id.* Plaintiff also reported pain when Defendant touched the skin below the gumline next to the root of tooth number 18. *Id.* In response, Defendant McBride performed another periapical x-ray, which suggested possible periodontal ligament[5] widening[6] near the root of tooth number 18. *Id.* This indicated potential infection of tooth number 18. (Doc. 37, Exh. 1, p. 3). To treat the possible infection, Defendant proscribed Plaintiff 28 tablets of penicillin to be taken once every six hours. (Doc. 37, Exh. 2, p. 5). To address Plaintiff's pain, Defendant prescribed 30 tablets of 600 mg ibuprofen to be taken one at a time every four to six hours as needed. *Id.* Defendant McBride also scheduled a follow-

---

[3]   Secondary caries is recurrent decay at the edges of an existing tooth restoration.

[4]   Apical pathology is a disease that affects the tip of the root of a tooth.

[5]   This is a layer of tissue that surrounds the root of a tooth and connects it to the socket.

[6]   Widening of the periodontal ligament can be an indication of inflammation, recent trauma to the tooth, abnormal biting or clenching or infection.

Page **4** of 15

up visit in two weeks' time. *Id*.

Plaintiff's initial follow-up appointment, scheduled for May 14, 2018, was cancelled because Plaintiff was placed on segregation status. (Doc. 37, Exh. 2, p. 5). Defendant ordered that Plaintiff be re-scheduled for a follow-up. (Doc. 37, Exh. 1, p. 3). Plaintiff was then seen by Defendant McBride on June 14, 2018. (Doc. 37, Exh. 2, p. 5). At this time, Plaintiff reported that tooth number 18 hurt when he bit down. *Id*. Defendant McBride informed Plaintiff that his clinical and radiographic examinations had not shown obvious pathology, and a definitive diagnosis could not be made. *Id*. Defendant informed Plaintiff that pulling the tooth without a diagnosis was ill advised and potentially unethical. *Id*. Defendant and Plaintiff then agreed that they would try penicillin and pain medication one more time, and Defendant indicated that if that did not work, he would likely recommend removal of the tooth. *Id*. Defendant McBride proscribed the same medication regimen from the May 1, 2018, visit and scheduled a follow-up visit in two weeks. *Id*.

Defendant McBride saw Plaintiff again on September 17, 2018, at which time Plaintiff stated that he continued to feel discomfort when chewing on tooth number 18. (Doc. 37, Exh. 2, p. 1). Defendant took another periapical x-ray and noted that the tooth had a very large filling and that periodontal ligament widening persisted. *Id*. At this time, McBride recommended removal of tooth number 18. *Id*. Plaintiff agreed and the tooth was removed. *Id*. Plaintiff then saw Defendant for a follow-up appointment on September 20, 2018. *Id*. Plaintiff expressed complaints of pain and swelling, consistent with the extraction of a tooth. *Id*. Defendant examined the extraction site and noted it was healing

as expected and that Plaintiff was tolerating the removal well. *Id.*

## DISCUSSION

Summary judgment is proper only if the movant shows that there is no genuine issue to any material fact, thereby entitling the movant to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's task is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is a genuine material dispute of fact that requires a trial. *See Stewart*, 14 F.4th at 760; *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

Where, as here, "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

Plaintiff is proceeding on an Eighth Amendment deliberate indifference claim against Defendant Dentist McBride. Plaintiff's suit alleges that McBride was deliberately indifferent in two ways. First, Plaintiff asserts that Defendant McBride took inadequate steps to treat his dental condition despite repeated complaints of pain. (Doc. 9, p. 3). Second, Plaintiff alleges that his repeated requests for appointments were ignored and

that the follow-up appointments ordered by Defendant McBride were not scheduled. *Id.* at p. 2. Defendant McBride contests both of Plaintiff's claims. Defendant argues that Plaintiff's dental condition did not amount to a serious dental need, and even if it did, Defendant exercised his professional judgment appropriately given Plaintiff's evolving dental needs. (Doc. 37, p. 9-15). Defendant McBride also asserts that he had no personal involvement with the scheduling of Plaintiff's follow-up appointments and that vicarious liability is insufficient for Plaintiff to allege a Section 1983 claim against him. Having reviewed the factual record, the Court agrees that Defendant McBride did not act deliberately indifferent to Plaintiff's dental needs. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 36).

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In practice, this means a plaintiff must demonstrate that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs. *See Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). Here, the Court finds that Plaintiff has failed to demonstrate the second prong of the test for deliberate indifference regarding the dental care provided by Defendant McBride.

First, the Court believes there is sufficient evidence in the record to create a dispute as to whether the severity of Plaintiff's dental condition constitutes an objectively serious medical need. An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005). Although the evidence in the record is scant, the Court finds there is a genuine dispute of material fact concerning this issue. While Plaintiff was not diagnosed with any dental condition, the record reflects that he experienced pain and issues with biting down for a year prior to tooth 18 being extracted. These issues caused Plaintiff to be examined by Defendant McBride four times over the course of that year. Plaintiff filed additional medical slips on November 18, 2017, February 10, 2018, and April 28, 2018, wherein he complained of the pain he experienced and sought further treatment. The Court recognizes that not every "ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim[.]" *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). "[H]owever, tooth decay can constitute an objectively serious medical condition, as can a delay in treatment that exacerbates an inmate's pain." *Willis v. Newbold*, Case No. 3:17-cv-536-JPG-RJD, 2019 WL 3046125, at *3 (S.D. Ill. Apr. 24, 2019), report and recommendation adopted, Case No. 3:17-cv-00536-JPG-RJD, 2019 WL 2183673 (S.D. Ill. May 21, 2019) (citations omitted). Thus, the Court will consider whether there is sufficient evidence that Defendant McBride acted with deliberate indifference.

Plaintiff alleges that McBride acted with deliberate indifference during the dental appointments that took place on September 6, 2017, May 1, 2018, and June 14, 2018. (Doc. 9, p. 2). Plaintiff contends that McBride acted with deliberate indifference at these appointments because he refused to pull the tooth causing Plaintiff dental pain. *Id.* However, the record reflects that McBride exercised his professional judgment

appropriately while monitoring the conditions of tooth 18 and tooth 19 and that he provided reasoned treatment as Plaintiff's condition progressed.

When assessing claims of deliberate indifference against a medical professional, the "professional judgment standard" applies. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Under this standard, a medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Sain v. Wood*, 512 F.3d 886, 894-895 (7th Cir 2008). A medical professional may only be held to have displayed deliberate indifference if "the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment." *Sain*, 512 F.3d at 895. The decision must be such a departure from established practice and judgment as to demonstrate "a complete abandonment of medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Defendant McBride did not exhibit deliberate indifference at any of the three appointments. At the appointment on September 6, 2017, McBride conducted an examination of Plaintiff in response to Plaintiff's complaint that he was experiencing "electricity" around tooth numbers 18 and 19. (Doc. 37, Exh. 1, p. 1). McBride noted no signs of disease or mobility and indicated that Plaintiff's existing fillings were aged but otherwise well placed and maintained. *Id.* at p. 1-2. Despite these negative indications of disease, McBride obtained periapical x-rays of Plaintiff's teeth, which also indicated no

evidence of pathology. *Id.* at p. 2. To treat Plaintiff's pain, McBride provided Plaintiff with 30 tablets of ibuprofen to be taken as needed. McBride's plan of care was to monitor these two teeth on an as needed basis moving forward. *Id.*

On May 1, 2018, McBride saw Plaintiff again for complaints of dental pain. McBride examined Plaintiff's teeth and performed a percussion test. (Doc. 37, Exh. 1, p. 2). Plaintiff reported pain in response to the percussion test, and McBride conducted an examination at the gum line of tooth number 18. *Id.* McBride performed another periapical x-ray, which showed possible periodontal ligament widening near the root of tooth 18; this indicated a potential infection. *Id.* at p. 2-3. To treat the potential infection, Defendant McBride proscribed Plaintiff 28 tablets of penicillin as well as 30 tablets of 600mg ibuprofen to be taken as needed. *Id.* at p. 3.

At the June 14, 2018, visit, McBride informed Plaintiff that clinical and radiographic examinations had not shown an obvious pathology and a definitive diagnosis for his dental pain. (Doc. 37, Exh. 1, p. 3). McBride informed Plaintiff that pulling teeth without a diagnosis was ill advised and unethical. *Id.* At this time, Plaintiff and McBride agreed that they would try penicillin and pain medication one final time and if that did not work, then McBride would proceed to remove tooth number 18.[7] *Id.* Then on September 17, 2018, McBride elected to pull tooth 18 as Plaintiff's pain persisted. *Id.* at p. 4.

---

[7] Plaintiff also alleges that the Ibuprofen proscribed did not ease his pain. However, during his deposition, Plaintiff testified that the Ibuprofen "reduced his pain greatly." (Doc. 37, Exh. 3, p. 5:6-12).

Although deliberate indifference to prolonged unnecessary pain alone can be the basis for an eighth amendment claim, "[a] prisoner's dissatisfaction with a doctor's proscribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation marks and citation omitted); s*ee also Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Here, the undisputed evidence demonstrates that Dr. McBride exercised his professional judgment in caring for Plaintiff's teeth. Defendant McBride continuously evolved his treatment plan and actively involved Plaintiff in the decision-making process. Plaintiff agreed to continuing with antibiotics and ibuprofen at the visit on June 14, 2018, even though his pain persisted. Then, as promised, Dr. McBride pulled tooth 18 when the antibiotics once again proved to be ineffective. This course of treatment did not amount to deliberate indifference.

However, Plaintiff also alleges that Defendant McBride acted with deliberate indifference when his follow-up dental appointments were not scheduled within a satisfactory time frame. Specifically, Plaintiff alleges that on or around August 24, 2017, and again on September 2, 2017, he submitted request slips for a dental appointment and was only seen several days later September 6, 2017. (Doc. 9, p. 1-2). Similarly, Plaintiff alleges that on November 18, 2017, February 10, 2018, and April 28, 2018, he submitted request slips for a dental appointment and was eventually seen on May 1, 2018. *Id.* at p. 2. Lastly, Plaintiff complains that Defendant Dr. McBride ordered a follow-up

appointment for two weeks after his May 1, 2018, appointment, but asserts that this appointment was never scheduled by Dr. McBride. *Id.* at p. 2.

To recover damages under 42 U.S.C § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. *See Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Additionally, agency principles of *respondeat* superior and vicarious liability do not apply to § 1983 claims. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Therefore, supervisors are held individually liable for violating the constitution only where they "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Defendant McBride submitted an affidavit to the Court as an exhibit to his Motion for Summary Judgment stating that "it is [his] custom, pattern, and practice, as well as the custom, pattern and practice of the dental community to rely on medical assistants to schedule appointments at a patient's request or follow-ups at the direction of a medical provider." (Doc. 37, Exh. 1, p. 4). This evidence is uncontroverted. Thus, Plaintiff's scheduling complaints really speak to the conduct of the medical assistants at Big Muddy River. Plaintiff has failed to put forward any evidence indicating that McBride was responsible for scheduling his appointments or that McBride actively turned a blind eye to his appointments being scheduled in an untimely manner. Moreover, Plaintiff's assertion that McBride is "the head person the highest seniority in that office," and

therefore has the responsibility to ensure that scheduling happens is insufficient because *respondeat* superior and vicarious liability do not apply to § 1983 claims. (Doc. 37, Exh. 3, p. 6:8-14).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment. (Doc. 36). The Court **FINDS** in favor of Defendant Randall McBride and against Plaintiff Carl Gallo. Further, the Clerk of Court is **DIRECTED** to enter judgment and close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating that a party must establish either manifest error of law or fact, or that newly discovered

evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

Alternatively, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days*. *See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit

is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  July 22, 2024.**

Digitally signed by Judge Sison
Date: 2024.07.22 15:41:12 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**